IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEMONE RODGERS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-181-M-BN |
| | § | |
| THE BRIDGE HOMELESS | § | |
| RECOVERY CENTER, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Kemone Rodgers, invoking the Court's federal question jurisdiction, filed an amended *pro se* complaint alleging that a private non-profit organization assisting the homeless and one of its employees discriminated against him based on race, in violation of Title VI of the Civil Rights Act of 1964; that another employee violated a criminal statute applicable to the U.S. Department of Housing and Urban Development ("HUD"); and that various defendants committed state law torts against him. *See* Dkt. Nos. 10, 11, & 13.

Rodgers has been granted leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No. 7, and his case is referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn.

The undersigned enters these findings of fact, conclusions of law, and recommendation that, because Rodgers, through an amended complaint, has failed to state a federal claim on which relief may be granted, the Court should dismiss the

federal claims with prejudice and decline to exercise supplemental jurisdiction over the state law claims remaining in the amended complaint.

## Legal Standards

A district court is required to screen a civil action filed IFP and may summarily dismiss that action, or any portion of the action, if, for example, it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). "The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam). And dismissal for failure to state a claim under either provision "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)), as neither the IFP statute nor the Federal Rules of Civil Procedure "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11.

Instead, plaintiffs need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Id.* at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

This rationale has even more force here, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing

*Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). But "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion," *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *cf. Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

## Analysis

"Title VI 'embodies a contract-like arrangement between Congress and entities that receive money from its appropriations: [T]he recipient's acceptance of the funds triggers coverage under the nondiscrimination provision.'" *Griffin v. Berks Cnty. Hous. Auth.*, No. 10-cv-05740, 2014 WL 6861864, at *7 (E.D. Pa. Dec. 5, 2014) (quoting *Burks v. City of Philadelphia*, 950 F. Supp. 678, 682 (E.D. Pa. 1996) (quoting, in turn, *U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986))).

It provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Invoking Section 2000d, Rodgers alleges that both an entity that receives federal funds (Bridge Steps) and an employee of that entity (Michelle Smith) discriminated against him based on race, *see, e.g.,* Dkt. No. 10, ¶¶ 43, 44, & 45, pointing to a single interaction between Ms. Smith and him in November 2017:

> During 11/2017, plaintiff returned to BRIDGE STEPS to submit some documents to M. Smith and noticed M. Smith planned on submitting an uncorrected affidavit containing insufficient information, instead of the recently corrected, affidavit which included sufficient explanations of days plaintiff spent homeless, so plaintiff had to requested M. Smith file the correct affidavit "proof of homelessness" documents or she would have omitted documents which verify the correct amount of time plaintiff spent homeless in the past 3 years. As plaintiff walked away from M. Smith on that date, she randomly told plaintiff, "That's why I don't like black people", and plaintiff replied, "I'm only part black." At first, plaintiff mentally registered the racial slur as funny because M. Smith appears to be black herself, so plaintiff walked off without thinking much of the unprovoked racial slur. Later that racial slur became offensive to plaintiff after M. Smith started treating plaintiff as if she meant what she said when she started doing things to make plaintiff feel she actual did not like the plaintiff, by not responding to emails, providing insufficient answers to questions, intentionally submitting adverse information, attempting to omit pertinent information, making offensive comments and refusing to assist plaintiff with overcoming homelessness, which reasonably indicates M. Smith discriminated against plaintiff based on race or another reason. Discrimination is not tolerated, nor is intentionally, omitting pertinent information which negatively impacts the type of federal assistance the plaintiff receives. Regardless of M. Smith's color or race, her offensive racial slur was inappropriate for any administrator of a federally funded program to speak out loud in front of a large diverse, crowd of people waiting for homeless assistance, who could have been offended by the racial slur, but afraid of losing assistance if they complained.

*Id.*, ¶ 17.

"Courts often use the Title VII proof scheme to analyze Title VI discrimination claims." *Shahmaleki v. Kan. State Univ.*, 147 F. Supp. 3d 1239, 1244 (D. Kan. 2015) (citing *Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty., Okla.*, 334 F.3d 928, 930 (10th Cir. 2003) (citing, in turn, *Guardians Ass'n v. Civil Serv. Comm'n of N.Y.*, 463 U.S. 582 (1983))).

As such, Rodgers's allegations would not support a claim of direct discrimination under Title VII. "To serve as direct evidence of an employer's discriminatory intent, a workplace comment must be 'direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [race] was an impermissible factor in the decision to terminate the employee.'" *Vital v. Nat'l Oilwell Varco*, Civ. A. No. H-12-1357, 2014 WL 4983485, at *18 (S.D. Tex. Sept. 30, 2014) (quoting *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996)).[1]

So, to determine whether a plausible discrimination claim has been alleged,

---

[1] *See also Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 273 (5th Cir. 2006) (per curiam) ("Jones allegedly overheard Henson state that he wanted to 'get rid of all the blacks' and 'fire a bunch of niggers.' Henson also allegedly requested a staffing agency to send white drivers instead of black drivers. Both comments and the request reveal a discriminatory motive on their face but lack the indicia of specificity and causation required to be direct evidence of race discrimination. The existence of racial animus scarcely appears in the form of statements that explicitly express an unlawful discriminatory intent. On such rare occasion, however, the plaintiff has brought forth evidence that clearly demonstrates an employer's discriminatory motive for its adverse employment action without any additional inferences or presumptions required by the court." (citing *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996))).

the Court's "analysis moves to the [first step of the] *McDonnell Douglas* burden-shifting framework," *id.* at *19, under which "a plaintiff must first set forth a prima facie case of discrimination," *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) (citation omitted); *accord Chance v. Reed*, 538 F. Supp. 2d 500, 510 (D. Conn. 2008) ("Courts apply the 'same burden-shifting framework articulated in *McDonnell Douglas* to disparate treatment claims arising under ... 2000d (Title VI).'" (quoting *Jackson v. Univ. of New Haven*, 228 F. Supp. 2d 156, 159 (D. Conn. 2002))); *Shahmaleki*, 147 F. Supp. 3d at 1244 ("Where, as here, a plaintiff seeks to prove discrimination through indirect evidence, courts apply the familiar *McDonnell Douglas* burden shifting framework. Under this framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence." (citations omitted)); *Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 666 (E.D. Pa. 2019) ("In the absence of direct evidence of discrimination, a plaintiff can state a Title VI discrimination claim with circumstantial evidence under the *McDonnell Douglas* framework." (citation omitted)).

To bring a plausible prima facie claim of indirect discrimination under the Civil Right Act of 1964, whether under Title VI or under Title VII, requires that a plaintiff show that he "was treated less favorably than other similarly situated [persons] outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)); *see also Griffin*, 2014 WL 6861864, at *9 ("To establish a prima facie case of racial discrimination under Title VI and the Fair Housing Act, plaintiffs must provide

record evidence which would permit a reasonable factfinder to conclude that … similarly-situated individuals outside of plaintiff's protected class were treated more favorably." (citation omitted)); *Katchur*, 354 F. Supp. 3d at 666 ("To establish a prima facie case of racial discrimination in an educational context under *McDonnell Douglas*, a plaintiff must demonstrate that … she was treated differently from similarly situated students who are not members of the protected class.").

Regarding claims of racial discrimination, the United States Court of Appeals for the Fifth Circuit has cautioned that a plaintiff need not make a showing of each prong of the prima facie test at the pleading stage. *See Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)). But *Raj* "does not exempt a plaintiff from alleging facts sufficient to establish the elements of her claims." *Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (per curiam) (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) ("Although [the plaintiff] did not have to submit evidence to establish a prima facie case of discrimination at [the motion to dismiss] stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." (citations omitted))).

In reviewing Rodgers's Title VI claim, the Court must therefore determine whether he has provided enough facts to allege that he suffered actionable discrimination based on race. *Cf. Swierkiewicz*, 534 U.S. at 512-13. And, if he "has not pled such facts," it is "proper[ to] dismiss [his] complaint." *Meadows*, 731 F. App'x at 318; *cf. Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766-67 (5th Cir. 2019)

(noting that the district court's "task is to identify the ultimate elements of [the applicable employment-related] claim and then determine whether the" plaintiff has pled those elements but that a "district court err[s if it] require[es a plaintiff] to plead something beyond those elements to survive a motion to dismiss").

Rodgers's failure to allege facts to show that he was treated less favorably than a similarly situated housing assistance applicant outside his protected class requires that the Court conclude that he has not alleged an actionable claim under Title VI. *Cf. Chance*, 538 F. Supp. 2d at 510-11 ("While Chance is a member of a protected class because of his race, he has failed to make any showing that there were similarly situated individuals who were treated differently. Chance points to two examples in support of his contention that Operation Hope treated white and black clients differently. However, even assuming *arguendo* that Chance produced evidence of these two situations where black clients were or would be treated differently from similarly situated white clients, Chance has still failed to produce evidence that someone who engaged in the type of conduct in which he admits engaging, or other conduct that was equally offensive or harassing, was treated differently. Nor does Chance's statement that Reed made a derogatory comment to him about black people constitute such evidence, as it is undisputed that Mazzeo, the clinical director, was the individual who informed Chance that he would not be allowed to use Operation Hope's services." (footnotes omitted)).

In fact, all Rodgers has alleged is that an individual employee made a single comment implicating race. First, there is "no individual liability under 42 U.S.C. §

2000d." *Id.* at 511 (collecting cases). And this "single comment – even if offensive – is not sufficient to uphold a Title VI claim on its own." *Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F.Supp.3d 338, 347 (S.D.N.Y. 2014) (citation omitted); *cf. C.S. v. Couch*, 843 F. Supp. 2d 894, 915 (N.D. Ind. 2011) ("To establish the elements of a prima facie case under Title VI, 'a complaining party must demonstrate that [his] race, color, or national origin was the motive for the discriminatory conduct.'" (quoting *Thompson v. Bd. of the Special Sch. Dist. No. 1*, 144 F.3d 574, 581 (8th Cir. 1998))).

Rodgers also attempts to allege civil liability under 18 U.S.C. § 1012, which criminalizes conduct against HUD. *See, e.g.,* Dkt. No. 10, ¶ 44. But Rodgers may "not assert a valid basis for federal question jurisdiction" by relying "on federal criminal statutes only," *Robinson v. Pulaski Tech. Coll.*, 698 F. App'x 859 (8th Cir. 2017) (per curiam) (citations omitted), as he "has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute," *Savannah v. United States*, No. 3:07-cv-2052-O, 2009 WL 1181066, at *2 (N.D. Tex. Apr. 30, 2009) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979)); *see also McKeague v. Matsuura*, Civ. No. 08-00571 ACK-KSC, 2009 WL 89112, at *2 (D. Haw. Jan. 12, 2009) (citing "a handful of federal criminal statutes ... fails to sufficiently demonstrate that [a plaintiff's] claims arise under federal law" (citation omitted)).

What's left are the various state law tort claims. *See, e.g.,* Dkt. No. 10, ¶¶ 45, 46, 47, 48, & 49. The Court should decline to exercise supplemental jurisdiction over

these claims.

To determine whether it should "relinquish jurisdiction over pendent state law claims," a court looks to "statutory factors set forth by 28 U.S.C. § 1367(c)" – "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction" – as well as "the common law factors of judicial economy, convenience, fairness, and comity" set forth by *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158-59 (5th Cir. 2011). As "no single factor is dispositive," *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008), "[t]he overall balance of the statutory factors is important," *Enochs*, 641 F.3d at 159 (citation omitted).

Here, that balance favors relinquishing jurisdiction over any remaining state law claims to allow Rodgers to pursue those claims in a state forum, if he so chooses. *See, e.g., Montgomery v. Biolife – Shire*, No. 3:18-cv-2057-S-BN, 2018 WL 4976729, at *4 (N.D. Tex. Sept. 20, 2018), *rec. accepted*, 2018 WL 4963612 (N.D. Tex. Oct. 15, 2018).

### Recommendation

Because Plaintiff Kemone Rodgers, through an amended complaint, has failed to state a federal claim on which relief may be granted, the Court should dismiss the federal claims in the amended complaint with prejudice and decline to exercise

supplemental jurisdiction over the remaining state law claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 28, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE